**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| UGUR HULAGU,<br><br>                             Petitioner,<br><br>v.<br><br>WARDEN JEREMY CASEY,<br><br>                             Respondent. | Case No.:  3:26-cv-02699-RBM-JLB<br><br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 6]** |

Pending before the Court is Petitioner Ugur Hulagu's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.  (Doc. 6.) For the reasons set forth below, the Amended Petition is **GRANTED**.

### I.     BACKGROUND

**A.     Factual Background**

Petitioner, a native of Türkiye, entered the United States seeking asylum on October 8, 2023.  (Doc. 6 at 2; Doc. 6-1, Declaration of Ugur Hulagu ["Hulagu Decl."] ¶ 1.) Petitioner was processed for a Notice to Appear ("NTA") and released on own recognizance shortly thereafter.  (Doc. 8-1, Declaration of Adrian Gonzalez ["Gonzalez Decl."] ¶ 6; *see* Doc. 8-2 at 9.)  After his release, Petitioner timely filed an asylum application and followed all conditions of release.  (Doc. 6 at 2.)

On September 7, 2025, Petitioner was re-detained at an immigration checkpoint and taken into custody pending removal proceedings.  (*Id.*; Gonzalez Decl. [Doc. 8-1] ¶ 8.)  On

1

December 1, 2025, an immigration judge denied Petitioner's asylum application and ordered him removed but granted withholding of removal to Türkiye. (Doc. 6 at 2; *see* Doc. 8-2 at 4–7.) Petitioner and the Government waived appeal. (*See* Doc. 8-2 at 7.) United States Immigration and Customs Enforcement ("ICE") has spoken to Petitioner about third country removal on one occasion. (Doc. 6 at 2.) Petitioner informed ICE that he does not have any family members in or any connections to third countries. (*Id.*)

**B.    Procedural History**

On April 28, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1), and a Motion for Appointment of Counsel (Doc. 2). On May 1, 2026, the Court issued an order appointing the Federal Defenders of San Diego, Inc. as counsel and setting a briefing schedule. (Doc. 3.) Petitioner, by and through counsel, filed the Amended Petition on May 4, 2026. (Doc. 6.)[1] Respondent filed a Return to the Petition on May 15, 2026. (Doc. 8.) Petitioner filed a Reply the next day. (Doc. 9.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

---

[1]  A petitioner may amend his habeas petition once as a matter of course within 21 days after serving it. *See* Fed. R. Civ. P. 15(a)(1)(A); *In re Morris*, 363 F.3d 891, 893 (9th Cir. 2004) ("Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases.").

3:26-cv-02699-RBM-JLB

## III.   **DISCUSSION**

Petitioner claims that his detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that ICE is attempting to remove him to a third country in violation of the Fifth Amendment's Due Process Clause.  (Doc. 6 at 6–14.)  Respondent argues that Petitioner "is properly detained under 8 U.S.C. § 1231(a) and because his post-final order removal period has lasted less than six months."  (Doc. 8 at 3.)

**A.     Presumption of Reasonableness**

Section 1231(a) "authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). Under the statute, a noncitizen ordered removed must be detained for 90 days, commonly referred to as the "removal period," pending the Government's efforts to secure the noncitizen's removal through negotiations with foreign governments.   8 U.S.C. § 1231(a)(2).  As relevant here, the 90-day removal period begins on "the date the order of removal becomes administratively final." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 830 (9th Cir. 2017) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)) (cleaned up).  "If the [noncitizen] . . . is not removed within the removal period, the [noncitizen] shall be subject to supervision under" applicable regulations pending removal.  28 U.S.C. § 1231(a)(3).

Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas*, 533 U.S. at 682.  The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id*. at 689.  The Supreme Court has recognized a six-month presumptively reasonable detention period after a noncitizen's removal order becomes final. *Id*. at 701.  After the six-month period expires, the noncitizen has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.  The burden then shifts to the Government to "respond with evidence sufficient to rebut that showing." *Id*.  If "removal is no longer reasonably foreseeable, continued detention is no longer

3:26-cv-02699-RBM-JLB

authorized by statute," and the noncitizen must be released. *Id*. at 699–700.

Here, an IJ ordered Petitioner removed on December 1, 2025, and both Parties agree that the removal order is final. (*See* Doc. 8-2 at 4–7.) Petitioner's detention is therefore within the presumptively reasonable six-month period, which will expire on June 1, 2026.

**B.    Significant Likelihood of Removal**

Although Petitioner has been in post-removal detention for less than six months, he argues that he has rebutted the presumption of reasonableness under *Zadvydas* because: (1) he cannot be removed to his home country of Türkiye; (2) removals to third countries are rare; and (3) "ICE has made no progress in removing [Petitioner] to [a third country] for nearly six months." (Doc. 6 at 9–11.) Respondent contends that the Government "is working expeditiously to identify a third country and acquire the necessary travel document in order to effectuate Petitioner's removal[,]" and as such, "Petitioner has not met his burden of rebutting the presumptively reasonable period of detention." (Doc. 8 at 3.)

Many district courts, including this Court, have found that the six-month presumption is rebuttable. *See Ndandu v. Noem*, —F. Supp. 3d— , 2026 WL 25848, at *3–4 (S.D. Cal. Jan. 5, 2026) (citing cases). "[W]ithin the six-month period, 'the petitioner must claim and *prove* [ ] that his removal is not reasonably foreseeable' to overcome the presumption." *Id*. at *4 (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025)) (emphasis in original). "If the government provides evidence specific to the petitioner's removal in response, courts deny relief." *Andreasian v. Noem*, Case No. 5:26-cv-00995-CV (DTB), 2026 WL 789954, at *3 (C.D. Cal. Mar. 16, 2026); *see Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) ("[T]he presumption scheme merely suggests that the burden the detainee must carry within the first six months . . . is a heavier one than after six months has elapsed.").

In this case, Petitioner was granted withholding of removal to Türkiye and no alternative countries were designated in his removal order. (*See* Doc. 8-2 at 6.) Respondent also concedes that "[a]part from [Türkiye], there appears to be no other country that would meet the definitions under subsection (i) through (vi)" of 8 U.S.C. § 1231(b)(2)(E). (Doc.

4

8 at 4.)  "This presents a legal impediment to Petitioner's eventual removal because he may not be removed to [Türkiye]—the only country he has a claim to citizenship—as long as [withholding] of removal remains in effect."  *Ndandu*, 2026 WL 25848, at *4; *see Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) (holding petitioner sufficiently established no significant likelihood of his removal in the reasonably foreseeable future based on his grant of asylum and CAT protection because "the government [was] not entitled to remove him to Sri Lanka, and no other country has been identified to which he might be removed."); *cf. Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (denying habeas relief where there was no evidence the petitioner's destination country will not accept him or that his removal was otherwise barred).

Petitioner references data showing that between 2020 and 2023 "ICE removed . . . only *five* non-citizens granted withholding or CAT relief to alternative countries." (Doc. 6 at 10 (quoting *Munoz-Saucedo*, 789 F. Supp. 3d at 398) (emphasis in original).)  He also states that in 2017, "there were at most 21 people of the thousands with withholding of removal deported to *any* country [which] includes dual citizens who only received withholding from one of their two other countries of origin." (*Id*. at 3, 7 (citing American Immigration Council & National Immigrant Justice Center, *The Difference Between Asylum and Withholding of Removal*, 7 (Oct. 2020)) (emphasis in original).)  While "historical outcomes do not necessarily control the result in any particular case, the data nevertheless supports the general inference that removal for this particular class of detainees is substantially more difficult."  *Munoz-Saucedo*, 789 F. Supp. 3d at 398.

Petitioner further claims that "he has no connections to any other country that might make his removal easier" and "foreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country." (Doc. 6 at 10 (quoting *Puertas Mendoza v. Bondi*, Case No. SA-25-CA-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025).)  Indeed, even when authorized, third country removal still requires the affirmative assent of the receiving country.  *See* 8 U.S.C. § 1231(b)(2)(E)(vii).

Since Petitioner's removal order became final over five months ago, ICE has yet to

identify any countries to which he may be removed. ICE contacted Removal and International Operations ("RIO") on January 7, 2026, "and begun the process of locating [a] third country for removal." (Gonzalez Decl. [Doc. 8-1] ¶ 11.) "On February 17, 2026, HQ RIO responded that they are actively working with the Department of State and DHS on avenues to remove Petitioner to a third country." (*Id*. ¶ 12.) Most recently, on April 13, 2026, ICE and RIO confirmed that they continue to "diligently seek . . . a third country for Petitioner's removal" but ICE has not provided any other details concerning its ongoing efforts to identify such countries. (*Id*. ¶ 13.) Nor is there an indication that any country is willing or even considering accepting Petitioner. *See Munoz-Saucedo*, 789 F. Supp. 3d at 400; *Ghamoushi-Ramandi v. Noem*, Case No.: 26cv1758-LL-SBC, 2026 WL 984278, at *3 (S.D. Cal. Apr. 13, 2026) (rejecting argument that ICE was "'working as diligently as possible' to identify countries that will accept [p]etitioner for removal" where it had "been about five months since [his] removal order became final, and ICE [had not] identified any country that would accept him."); *Tumasov v. Doe 1*, Case No.: 26cv590-LL-DEB, 2026 WL 458146, at *3–4 (S.D. Cal. Feb. 18, 2026) (finding the same as to a petitioner in post-removal detention for three months). As Petitioner notes, "in five-and-a-half months, it appears that RIO has not even asked another country to take him." (Doc. 9 at 4.)

Respondent argues "it would be premature" to conclude there is no significant likelihood of removal in the reasonably foreseeable future "before permitting ICE an opportunity to complete its diligent efforts to effect Petitioner's removal." (Doc. 8 at 5.) "But [Respondent's] good faith efforts alone do not render a noncitizen's detention reasonable as this would require that a noncitizen 'show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable—which demands more than [the Supreme Court's] reading of the statute can bear.'" *Ndandu*, 2026 WL 25848, at *4 (quoting *Zadvydas*, 533 U.S. at 702) (emphasis added); *see Conchas-Valdez v. Casey*, No. 25-cv-02469-DMS-JLB, 2025 WL 2884822, at *3 (S.D. Cal. Oct. 6, 2025) ("[T]he Government's minimal work on this case—one resettlement request and two follow up emails over the course of seven months—do not instill confidence that it will be able to

6

secure [the] [p]etitioner's removal in the reasonably foreseeable future.").

Petitioner has therefore sufficiently established that his removal is not reasonably foreseeable and that his ongoing detention is not reasonably necessary to secure his removal. *See Zadvydas*, 533 U.S. at 699–700. Accordingly, Petitioner's continued detention is no longer reasonable or authorized by statute and is therefore unlawful.

**C. Third Country Removal**

Petitioner claims that "if ICE did suddenly prove able to remove [him] to a third country, it would do so under a policy that violates the Fifth Amendment, the Convention Against Torture, and implementing regulations." (Doc. 6 at 11.) As an exhibit, Petitioner attaches the July 9, 2025 memo from ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)." (Doc. 6-2, Ex. B at 1–3.)

The Court has previously found the policies in the ICE Memo "are contrary to Ninth Circuit precedent" and "present due process issues." *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *6 (S.D. Cal. Dec. 10, 2025) (quoting *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Esmail v. Noem*, Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025)); *see Abdirahman v. Noem*, Case No.: 3:26-cv-00177-RBM-AHG, 2026 WL 311509, at *2 (S.D. Cal. Feb. 5, 2026) (adopting reasoning in *Azzo*); *Gonzalez v. LaRose*, Case No.: 3:26-cv-00299-RBM-DEB, 2026 WL 440309, at *2 (S.D. Cal. Feb. 17, 2026) (same); *accord Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). In those cases, the Court held that the Government must provide such petitioners, who they actively sought to remove to a third country, with adequate notice and an opportunity to be heard before their removal. *See Azzo*, 2025 WL 3535208, at *6; *see also G.A.A. v. Chestnut*, Case No. 1:25-cv-01102 EPG-HC, 2025 WL 3251316, at *6–7 (E.D. Cal. Nov. 21, 2025) ("Despite

3:26-cv-02699-RBM-JLB

[respondents'] assurances," there is still "a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal").

In this case, Respondent confirm that "ICE has been actively working to identify a third country to which Petitioner may be removed." (Doc. 8 at 12.)  The Court therefore adopts its reasoning in *Azzo* and reaches the same conclusion: Petitioner must be provided with notice and an opportunity to be heard before removal to a third country.

## IV.   CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 6) is **GRANTED**. Accordingly:

1. Respondent is **ORDERED** to immediately release Petitioner from custody, subject to "appropriate conditions" of supervision to be determined by immigration authorities.  *See* 8 C.F.R. § 241.13(h).[2]

2. Respondent and officers, agents, employees, attorneys, and persons acting on their behalf or in concert with him are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard.[3]

**IT IS SO ORDERED**.

DATE:  May 21, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2]  *See Vlasov v. Bondi*, Case No.: 25-cv-1342-AJB-MSB, 2025 WL 2258582, at *3 (S.D. Cal. Aug. 7, 2025); *Daneshfar v. Facility Admin.*, CASE NO. 2:25-cv-01708-DGE-MLP, 2026 WL 71405, at *1 (W.D. Wash. Jan. 9, 2026).

[3]  *See Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *13 (E.D. Cal. Sept. 18, 2025).

3:26-cv-02699-RBM-JLB